UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN STEVEN BRAISTED, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-328-B-W |
| | ) |
| ALFRED CICHON, | ) |
| et al., | ) |
|     Defendants. | ) |

**RECOMMENDED DECISION ON
UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

Brian Braisted brought this civil action complaining of the medical care he received with respect to a persistent foot problem at the Penobscot County Jail. (Doc. Nos. 1 & 17.) Alfred Cichon has moved for summary judgment. Braisted has failed to file a response. Having concluded, based on the undisputed facts material to Braisted's claim, that Cichon is entitled to judgment as a matter of law, I recommend that the Court grant the motion for summary judgment. The action remains pending as to Alex Brazalovich who has not moved for judgment.

*DISCUSSION*

**A.    Summary Judgment Standard**

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" United States v. Union Bank For Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (quoting Federal Rule of Civil Procedure 56(c)). I draw all reasonable inferences in favor of Braisted, but where he bears the burden of proof, he "'must present definite, competent evidence' from which a

reasonable jury could find in [his] favor." Id. (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

Braisted has not presented any evidence in defense of the motion for summary judgment. However, this court,

> may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days. Rather, the court must determine whether summary judgment is "appropriate," which means that it must assure itself that the moving party's submission shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Advisory Committee Note to Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 -8 (1st Cir. 2002).

**B. Undisputed Material Facts**

Brian Steven Braisted is a prisoner confined to the Penobscot County Jail. (SMF ¶ 1.) Braisted was transferred from the Pinellas County (Florida) Sherriff's Office into the Penobscot County Jail on July 9, 2008. (Id. ¶ 2.)

When an inmate arrives at the Penobscot County Jail, he goes through an intake procedure which includes a screening process as to the inmate's medical concerns. The results of this intake process are recorded in a Penobscot County S.O. Main Booking Table. (Id. ¶ 3.). At the time of his transfer into the Penobscot County Jail, Brian Braisted reported that he was receiving a prescribed medicine Zoloft for psychiatric or emotional issues. He denied having any other medical problems. (Id. ¶ 4.)

Alfred Cichon is a Physician's Assistant employed by Allied Resources for Correctional Health, Inc. ("ARCH"), a corporation engaged in the business of supplying healthcare

2

professionals to county correctional facilities. (Id. ¶ 5.) Mr. Cichon has been employed by ARCH as a Physician's Assistant since 1992. (Id. ¶ 6.) As a Physician's Assistant with ARCH, Cichon, along with other medical providers affiliated with ARCH, provided healthcare services to inmates incarcerated at the Penobscot County Jail. (Id. ¶ 7.) In his role as a Physician's Assistant with ARCH, Alfred Cichon provided medical services to Brian Braisted while Mr. Braisted has been an inmate at the Penobscot County Jail. (Id. ¶ 8.)

Because of the number of inmates housed at the Penobscot County Jail, neither Alfred Cichon nor any other physician's assistants at the jail were assigned to care for a particular inmate as "their patient." Rather, inmates are seen on an as-needed basis depending on their need for treatment and in response to their requests for medical treatment. (Id. ¶ 9.)

When an inmate requests medical treatment that has not been scheduled by a health care provider, he completes an Inmate Request Form. These forms are completed by the inmate and filed with the jail, to be referred to the health care staff. When a health care practitioner arrives at the jail, the practitioner reviews these requests for medical treatment. (Id. ¶ 10.) Medical records regarding the inmates at the Penobscot County Jail are kept by the Jail in a chart in a central location for use by all health care providers affiliated with ARCH to reference and rely upon when providing treatment to the inmates at the jail. (Id. ¶ 11.) These medical charts kept at the jail include the Penobscot County S.O. Main Booking Table health screening, which is completed when an inmate arrives at the jail, medical transfer records, Inmate Request Forms completed by the inmates, Physical Examination Records completed by health care personnel at the jail, Medication Administration Forms, Progress Notes, laboratory request forms and lab results, and written medical reports. (Id. ¶ 12.) The purpose in keeping these medical records in a central location is to allow access by all of the health care providers to an inmate's medical

records while maintaining privacy, so that the health care personnel may refer to those records to understand the inmate's prior complaints and medical history, to have ready access to information regarding ongoing diagnoses and treatment of complaints, and to have access to diagnostic test results which might affect a course of treatment. (Id. ¶ 13.)[1]

Upon his arrival at the Penobscot County Jail on July 9, 2008, Brian Braisted requested medical treatment, as is reflected on an Inmate Request Form which is a part of the medical chart kept by the Penobscot County Jail. (Id. ¶ 15.) Cichon reviewed those documents contained within the Penobscot County Jail's file as part of his treatment of Braisted because those records contained information that a Physician's Assistant would normally rely on in formulating an opinion about the patient's medical condition and his need for treatment. (Id. ¶ 16.) In addition to the Penobscot County SO Main Booking Table document, Alfred Cichon reviewed a Medical Transfer sheet reflecting medical treatment Braisted had previously received while incarcerated by the Pinellas County (of Florida) Sheriff's Office. It also contained information that a Physician's Assistant would normally rely on in formulating an opinion about a patient's medical condition and his need for treatment. It reflects that Mr. Braisted had been treated for a condition diagnosed as "Carbuncle and Furuncle" as well as Tinea Pedis (Athlete's Foot). Both had an onset of January 30, 2008, though Mr. Braisted was not provided with any prescription medications (aside from a cream for Athlete's Foot) or other specific treatment regarding his left toe at the time of transfer. (Id. ¶ 17.)

---

[1] There is a clinic area set aside at the Penobscot County Jail for the examination and treatment of inmates. However, the inmates are in the care and custody of the jail's guards, and the health care providers can not always guarantee that they will be transported in a timely fashion to the clinic. As such, the health care providers can often provide better service to the inmates by traveling to meet them in areas other than the clinic. For that reason, it is sometimes necessary to treat them in parts of the hallways of the County Jail which are out of the casual observation of other inmates. (Id. ¶ 14.)

Alfred Cichon first treated Mr. Braisted on July 13, 2008, at 12:30. Cichon noted that Mr. Braisted had a small lesion on his left great toe. The tissue of his toe was moist and macerated, which means soft and steeping in fluid, after Bandaid use. Cichon advised Mr. Braisted to keep the wound clean and dry. Cichon planned to re-evaluate the wound once Mr. Braisted had done so, as it was not possible for Cichon to accurately assess Mr. Braisted's condition given the moistness and maceration caused by the Band-Aid use. (Id. ¶ 18.) On July 13, 2008, Mr. Braisted completed a second Inmate Request Form, which also was contained in the Penobscot County Jail file. In that request, Braisted noted that he had an open sore on his left toe and requested to be seen by another nurse who provided care at the jail due to a "verbal confrontation with a male doctor on July 13, 2008." (Id. ¶ 19.)

At all times relevant to this complaint, Julie Zales also worked as a Physician's Assistant with ARCH at the Penobscot County Jail. Typically, Julie Zales and Alfred Cichon would not be working at the jail on the same date. (Id. ¶ 20.) Notes within the Penobscot County Jail's medical file reflect that on July 17, 2008, Mr. Braisted was re-evaluated by Julie Zales, PA-C. Zales noted that Mr. Braisted's left great toe had erosive tissue on the pad which was present prior to his incarceration. She noted no sign of infection, debrided the open lesions, and treated them with a clean dressing. She provided Mr. Braisted with a prescription for Ibuprofen for ten days, and instructions to change the dressing on his left great toe twice a day for seven days. (Id. ¶ 21.)

Included within an inmate's medical file at the Penobscot County Jail is a Medication Administration Form which reflects treatments or medication provided to the inmate during a given month. (Id. ¶ 22.) The Medication Administration Form for the month of July of 2008, reflects that as of July 10, 2008, through July 31, 2008, Mr. Braisted continued to receive Zoloft.

Below that entry it reflects that he began receiving Ibuprofen on July 17, 2008, and began having his dressing changed on July 18, 2008. (Id. ¶ 23.) Dressing changes are not always reflected on the Medication Administration Form because they are not "medication." (Id. ¶ 24.)

On August 10, 2008, Mr. Braisted completed an Inmate Request Form complaining of swelling in his left toe. He noted that while the lesion was improving, his inflammation was not. (Id. ¶ 25.) The medical records for Mr. Braisted reflect that he was seen by Julie Zales on August 14, 2008. She reported that Mr. Braisted was transported to the medical area to re-check lesions on his great toe as he reported the area had not responded to any treatment. She noted the lesions appeared granulated although deeper and that the great toe pad was not swollen. She assessed that there were ulcerative blisters to the great toe. She cleaned the area with Betadine and applied a pressure dressing. She also provided a prophylactic series of Keflex, an antibiotic, to ward off infection. (Id. ¶ 26.) The Medication Administration Forms contained in Mr. Braisted's file reflect that he received that antibiotic as prescribed. (Id. ¶ 27.) The medical records for Braisted document that Zales also requested blood tests which were performed in order to rule out possible medical conditions, such as diabetes, which might have affected the anticipated healing time for such an injury. The tests were within normal limits. (Id. ¶ 28.)

On August 19, 2008, Alfred Cichon saw Brian Braisted for a dressing change. At that time, Cichon noted no sign of infection in his toe. The "injury" appeared to be atypical verruca, or in lay terms a Plantar's Wart. The area was still wet, however, and difficult to adequately evaluate. For that reason, Cichon opted to again advise Mr. Braisted to allow the toe to dry, as it would have been inappropriate to begin treating the wart with chemicals, such as Compound W, when the tissue remained tender and moist. Cichon also felt the tissue needed to dry out more to allow for a more mature diagnosis. (Id. ¶ 29.)

On September 19, 2008, Cichon provided treatment to Mr. Braisted regarding his toe. Mr. Cichon advised Mr. Braisted that the problem with his toe appeared to be a Plantar's Wart, which appeared to have been present for an extended period of time. Cichon was not sure exactly why the lesion was not drying up and healing as one would expect, though he suspected it was due to continued use of Bandaids or similar dressings. He later discussed with the jail administration whether it wanted to have Mr. Braisted referred out for further treatment, though he did not believe it was warranted at the time. (Id. ¶ 30.)

On November 21, 2008, Mr. Cichon had a follow up visit with Brian Braisted. At that time Cichon noted that there clearly was a verrucccous lesion on the plantar surface of Mr. Braisted's great toe, though it continued to be quite moist. Mr. Braisted also had some mild swelling in his ankle and feet. For the first time, Mr. Braisted noted that he had suffered from kidney problems as a child. Continuing kidney problems might account for the swelling he was experiencing, or perhaps even the delay in healing of his toe. Accordingly, Cichon requested lab work to assess Mr. Braisted's kidney function. He also provided a plan that allowed Mr. Braisted to wear shower shoes except for those times he was outside of his housing unit, with the hope that this would allow the lesion on his toe to finally dry out. (Id. ¶ 31.)

Treating a Plantar's Wart is within the scope of the care which Alfred Cichon provides within the County Jail, and within the scope of his treatment as a Physician's Assistant. Based on his treatment of Mr. Braisted and his training and experience as a Physician's Assistant it is his medical opinion that Mr. Braisted does not need a referral to a specialist at this time. (Id. ¶ 32.)

**C.      Braisted's Claims Fail under the Eighth Amendment Deliberate Indifference Standard**

The Eighth Amendment prohibition against cruel and unusual punishment protects pre-trial detainees to the same, or greater extent, as it does convicted inmates. See Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)); accord Calderon-Ortiz v. Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002). With respect to the Eighth Amendment deliberate indifference standard in the context of medical care for inmates, the First Circuit summarized in Ruiz-Rosa v. Rullan:

> For medical treatment in prison to offend the Constitution, the care "must involve 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.' " Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir.2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). Deliberate indifference in this context may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with "actual knowledge of impending harm, easily preventable." Id. at 162 (internal quotation marks omitted). Deliberate indifference means that "a prison official subjectively 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Burrell [v. Hampshire County], 307 F.3d [1,] 8 [(1st Cir. 2002)](quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Therefore, substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation. Feeney, 464 F.3d at 161-62.

485 F.3d 150, 156 (1st Cir. 2007).

"'Deliberate indifference' thus defines a narrow band of conduct in this setting." Feeney, 464 F.3d at 162.  "The care provided must have been '"so inadequate as to shock the conscience." '" Id. (quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir.1991), in turn quoting Sires v. Berman, 834 F.2d 9, 13 (1st Cir.1987)).

On these undisputed material facts there is no question that the response to Braisted's foot condition does not shock the conscious.  Although there is clearly a disagreement about his care

8

as punctuated by the prosecution of this suit-- and even if there were some question of negligence -- Cichon's response to Braisted's medical complaint does not fall within the "narrow band of conduct" that gives rise to a sustainable Eighth Amendment deliberate indifference to medical needs claim. The factual record set forth above, that Braisted has failed to contest, tells a story of frequent medical attention, repeated attempts to treat the condition, and a reasonable exercise of professional judgment.

### *Conclusion*

For these reasons I recommend that the Court grant Alfred Cichon's motion for summary judgment.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 24, 2009                    /s/ Margaret J. Kravchuk
                                  U.S. Magistrate Judge